2022 IL App (1st) 191905

FIFTH DIVISION
SEPTEMBER 9, 2022

No. 1-19-1905

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 7694 |
| | ) | |
| | ) | |
| MARVIN TREADWELL, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     On June 5, 2006, the defendant-appellant, Marvin Treadwell, filed a *pro se* postconviction petition in the circuit court of Cook County, making numerous allegations regarding his trial and sentence. On May 24, 2018, the defendant's postconviction counsel filed an amended petition and clarification of the defendant's postconviction claims. The circuit court dismissed the petition at the second stage of postconviction proceedings. The defendant now appeals, arguing, *inter alia¸* that his postconviction counsel provided unreasonable assistance. For the reasons that follow, we reverse the judgment of the circuit court of Cook County and remand this case to the circuit court for new second-stage proceedings, after allowing the defendant leave to amend his petition following appointment of new postconviction counsel.

¶ 2                                    BACKGROUND

¶ 3      In 2004, the defendant was convicted, in a bench trial, of the first degree murder and armed robbery of Howard Thomas. The crimes were committed in 1999, when the defendant was 17 years old. He was sentenced to concurrent terms of 32 years' imprisonment for first degree murder and 15 years' imprisonment for armed robbery. The facts of this case will be repeated here only as is necessary to resolve this appeal. For a full recitation of facts leading up to the defendant's conviction and sentence, see *People v. Treadwell*, No. 1-06-0269 (2006).

¶ 4      Following his arrest, the defendant retained a private attorney, Chester Slaughter. Mr. Slaughter first filed his appearance on the defendant's behalf in 2000. In February 2004, the defendant told the trial judge that he wanted to have a public defender appointed because Mr. Slaughter was "not representing [him] right" and the defendant cited Mr. Slaughter's repeated failures to appear in court. The trial judge informed the defendant that it was "fine" to have another lawyer represent him, but Mr. Slaughter would have to come into court personally to withdraw. On March 2, 2004, the case was continued before a different judge, who confirmed that the defendant was eligible to be represented by a public defender instead of by Mr. Slaughter. The judge then directed the clerk to tell Mr. Slaughter to appear in open court in order to withdraw. On March 8, 2004, the case was continued before yet a third judge, and Mr. Slaughter appeared in court and informed the court that he wanted to withdraw. The judge told Mr. Slaughter that he had to stay with the case until it was assigned to its permanent judge, at which point he could withdraw. On March 12, 2004, a permanent trial judge, Judge Dennis Dernbach, was assigned to the case. Judge Dernbach denied Mr. Slaughter's request to withdraw, citing the length of time the case had been pending. Mr. Slaughter did not explain to the judge that it was the defendant's wish that he

withdraw. Rather, he suggested that his request to withdraw was because he was not being paid. The defendant's bench trial was set to commence on October 18, 2004, with Mr. Slaughter as his counsel.

¶ 5     On September 24, 2004, Mr. Slaughter's law license was suspended by the Illinois Supreme Court on the recommendation of the Attorney Registration and Disciplinary Commission (ARDC). The suspension was for five months, beginning October 15, 2004. The suspension was based on Mr. Slaughter having provided false information on five different credit card and loan applications.

¶ 6     On October 7, 2004, Mr. Slaughter filed a motion, in the Illinois Supreme Court, seeking to stay his suspension for 30 days. In his motion to stay the suspension, Mr. Slaughter stated that he had been "working diligently to complete his pending cases or make arrangements for the handling of those cases during the pendency of his suspension." He explained, in his motion, that he had a pending murder trial for a client named David White. According to Mr. Slaughter's motion, that case had been continued to October 12, 2004, at which time the State was planning to call three witnesses before resting. His motion stated:

> "If the State completes its case and the defendant [White] is found not guilty
> on that date, [Mr. Slaughter] would be prepared to begin his suspension as ordered.
> However, if the defendant [White] is found guilty, he would have to be sentenced
> which would probably take place later in October. If the trial is not completed on
> the 12th of October or, if the matter is continued at that time for a sentencing
> hearing, [Mr.] Slaughter would have to withdraw, and a new attorney, who did not
> try the case, would have to come in and complete the trial or sentencing. This would

undoubtedly be a burden to the trial court and could prejudice the criminal defendant in a case involving very serious charges."

Therefore, Mr. Slaughter asked the Illinois Supreme Court to stay his suspension for 30 days so that he could "complete the trial already commenced" in that case. The motion did not mention the defendant's (Marvin Treadwell's)[1] trial, which was set to commence 11 days later, on October 18, 2004.

¶ 7     On October 12, 2004, six days prior to the start of the defendant's trial, our supreme court granted Mr. Slaughter's motion to stay his suspension for 30 days, until November 15, 2004. The order stated that the motion was granted "to allow completion of pending murder trial."

¶ 8     Although there was no mention of the defendant's trial in Mr. Slaughter's motion to stay his suspension, on October 18, 2004, the defendant's bench trial commenced, with Mr. Slaughter representing him. Mr. Slaughter continued to represent the defendant throughout his trial and sentencing, which concluded on November 4, 2004. Thereafter, the defendant filed an appeal in this court.

¶ 9     On direct appeal, the defendant argued that Mr. Slaughter rendered ineffective assistance of counsel. Specifically, he claimed that Mr. Slaughter neglected his case and failed to provide a vigorous defense. The defendant argued that because Mr. Slaughter was embroiled in proceedings affecting his law license before the ARDC, he was busy defending himself and was therefore unable to devote appropriate attention to representing the defendant in his murder case. The defendant also complained that Mr. Slaughter's representation of another defendant in the

---

[1]For the sake of clarity and consistency, throughout the rest of this opinion, any reference to "the defendant" refers to Marvin Treadwell. Conversely, any reference to the defendant David White will specifically indicate such by identifying him by name.

unrelated White murder trial, which was the subject of the motion to stay, was an additional distraction for Mr. Slaughter, thus preventing him from representing the defendant effectively. The defendant asserted that Mr. Slaughter's ineffectiveness was demonstrated by his failure to: (1) file a meaningful motion to suppress; (2) appear in court between December 2002 and March 2004; and (3) file a timely notice of appeal.

¶ 10    On direct appeal, this court rejected the defendant's ineffective assistance of counsel claim. This court found that the defendant had failed to show that he suffered prejudice by Mr. Slaughter's actions. We also noted that recent case law debunked the assertion of a *per se* conflict simply because disciplinary proceedings are pending before the ARDC against a lawyer who is representing a defendant. We therefore affirmed the defendant's conviction and sentence. *Id.*

¶ 11    On June 5, 2007, the defendant filed a *pro se* postconviction petition, again alleging that Mr. Slaughter rendered ineffective assistance of counsel for a variety of reasons. None of the reasons cited by the defendant mentioned Mr. Slaughter's suspension or ARDC issues. The postconviction petition advanced to second-stage proceedings and postconviction counsel, Assistant Public Defender (APD) Jeffrey Walker, was appointed to represent the defendant.

¶ 12    On March 4, 2014, the defendant filed a *pro se* petition for relief from judgment.[2] In that pleading, the defendant alleged that Mr. Slaughter operated under a *per se* conflict of interest at the time of his trial in 2004 because Mr. Slaughter was "actually not allowed to practice law," since he had "lied by omission to the Illinois Supreme Court" in his motion to stay his suspension.

¶ 13    On August 4, 2016, the defendant, through APD Walker, filed a supplemental

---

[2]While the *pro se* petition for relief from judgment was a new, separate pleading, it appeared to fundamentally be an amendment of the defendant's already filed postconviction petition, which was still pending at that time.

postconviction petition. The supplemental postconviction petition alleged, *inter alia*, that Judge Dernbach slept through significant portions of the trial; that the defendant was denied effective assistance of counsel where Mr. Slaughter failed to notify him or the trial court "of [Mr. Slaughter's] problems with the ARDC"; and that the defendant's 32-year sentence is unconstitutional because he was 17 years old at the time of the crimes. Attached to the supplemental postconviction petition was the defendant's original *pro se* petition and an Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) certificate.

¶ 14    In 2017 and again in 2018, the State asked the trial court to require the defendant to file an amended pleading that would supersede all previous pleadings in order to clarify which claims were at issue, as numerous postconviction pleadings had been filed by the defendant. The trial court granted that request.

¶ 15    On January 31, 2018, new postconviction counsel, APD James Jacobs, was appointed to replace APD Walker. On May 24, 2018, APD Jacobs filed an "Amended Petition and Clarification of Post-Conviction Claims" on behalf of the defendant. The amended petition stated: "The only claims and exhibits to be considered by this Court and responded to by the State are contained in the attached August 4, 2016, Supplemental Petition filed by Attorney Jeffery Walker." The August 4, 2016, supplemental postconviction petition was attached.

¶ 16    On May 1, 2019, the State moved to dismiss the amended petition. The State argued that the ineffective assistance of counsel claim had already been raised in the defendant's direct appeal and therefore was barred by the doctrine of *res judicata*.

¶ 17    Following a hearing on August 15, 2019, the trial court dismissed the defendant's postconviction petition. The trial court rejected all of the claims raised by the defendant in the

amended petition. In rejecting the claim of ineffective assistance of counsel, the trial court stated:

"The fourth claim, that the trial counsel was ineffective because he failed to inform the defendant and the trial court of his ARDC problems at the time of trial, the appellate court also heard and rejected this claim. The appellate court noted that the Illinois Supreme Court *** declined to create a *per se* conflict of interest rule in cases involving attorneys representing defendants in criminal cases while also defending their own ARDC claims.

Here again, the defendant would have had to show that he was prejudiced. The appellate court found that the defendant had not shown that. In fact, the appellate court noted that the trial counsel was very zealous in his representation of the defendant.

Having failed to establish prejudice, the court believes that the [defendant] has failed in his attempt to establish this claim also."

The trial court further rejected the other postconviction claims on the basis that the defendant failed to establish that he was prejudiced by the "drowsiness" of Judge Dernbach and that the defendant's 32-year sentence is not a *de facto* life sentence. This appeal followed.

¶ 18                                  ANALYSIS

¶ 19    We note that we have jurisdiction to consider this matter, as the defendant filed a timely notice of appeal. Ill. S. Ct. Rs. 606, 651(a) (eff. July 1, 2017).

¶ 20    The defendant presents the following issues on appeal: (1) whether postconviction counsel provided unreasonable assistance where he failed to shape the postconviction petition to include cognizable claims of ineffective assistance of appellate counsel; (2) whether postconviction counsel failed to comply with Rule 651(c); (3) whether the trial court erred in finding that the defendant was required to make a substantial showing of prejudice where the trial judge slept

through significant portions of his bench trial; and (4) whether the defendant's 32-year sentence is unconstitutional. Because we find the first issue to be dispositive, we turn to it first.

¶ 21    The defendant first argues that his postconviction counsel provided unreasonable assistance by failing to frame his postconviction petition to include cognizable claims of ineffective assistance of appellate counsel.[3] Specifically, the defendant claims that his *pro se* postconviction pleadings argued that Mr. Slaughter was *per se* ineffective where the trial and sentencing occurred during the stay of Mr. Slaughter's suspension, which was obtained from the Illinois Supreme Court under the pretense that he would continue to only represent another defendant (White) in an unrelated murder trial. The defendant asserts that postconviction counsel should have framed the postconviction claim into a cognizable ineffective assistance of appellate counsel claim for failing to raise that specific issue on direct appeal. He argues that postconviction counsel simply repeated the "meritless claims regarding [Mr. Slaughter's] neglect of the case, most of which were *res judicata.*" The defendant argues that he had a meritorious claim that his postconviction counsel failed to properly present. More precisely, he avers that his postconviction counsel should have amended his petition to argue that appellate counsel was ineffective for failing to argue that Mr. Slaughter was *per se* ineffective due to the nature of his suspension while representing the defendant in his bench trial and sentencing. The defendant therefore asserts that postconviction counsel provided unreasonable assistance and asks us to remand this case to the trial court for new second-stage proceedings on that basis. He also argues that postconviction

---

[3]Although unclear from his briefs, it appears that the defendant is arguing that *both* APD Walker and APD Jacobs, who each represented him during the postconviction proceedings, provided unreasonable assistance. As the defendant treats both counsels as singular postconviction counsel who ultimately failed to frame his postconviction claims appropriately, we will do the same.

counsel provided unreasonable assistance by not framing his pleadings into a claim of ineffective assistance of appellate counsel for failing to raise, on direct appeal, that the trial court denied him the right to counsel of his choice.

¶ 22    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)) provides a procedure for persons under criminal sentence to claim that their convictions resulted from a substantial denial of their constitutional rights. *Id.* § 122-1(a). A petition under the Act must "clearly set forth the respects in which [a] petitioner's constitutional rights were violated" and "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* § 122-2. The purpose of a postconviction proceeding is to allow a defendant to raise constitutional issues that were not, and could not have been, decided on direct appeal. *People v. Davis*, 2022 IL App (1st) 200467, ¶ 85. As a result, issues that were decided on direct appeal are barred as *res judicata* and issues that could have been raised on direct appeal but were not, are forfeited. *Id.*

¶ 23    "There is no constitutional right to counsel in postconviction proceedings, and as such, a postconviction petitioner cannot claim sixth amendment ineffective assistance of counsel rights in such proceedings." *People v. Zirko*, 2021 IL App (1st) 162956, ¶ 18. Rather, a petitioner is only entitled to the level of assistance of counsel provided by the Act, which has been defined by Illinois courts as a *reasonable* level of assistance of counsel. *Id.* Our supreme court has not explicitly set a standard for determining whether postconviction counsel provided a reasonable level of assistance, but this court has applied a "*Strickland*-like" analysis for evaluating counsel's performance. *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 162 (citing *People v. Zareski*, 2017 IL App (1st) 150836, ¶¶ 58-59). Under that standard, "we evaluate whether

the defendant has demonstrated prejudice, that is, whether there is a reasonable probability that, but for [postconviction] counsel's errors, the result of the proceeding would have been different." *Id.*

¶ 24 In this case, the argument that postconviction counsel provided unreasonable assistance is based on counsel's alleged failure to frame the defendant's *pro se* postconviction claims as a cognizable claim of ineffective assistance of appellate counsel. To be exact, he avers that postconviction counsel should have clarified, in the amended postconviction petition, the claim that appellate counsel was ineffective for failing to argue on direct appeal that Mr. Slaughter was *per se* ineffective[4] in that he was not authorized to practice law except for the specific representation of a sole defendant in an unrelated case and was not authorized to represent the defendant throughout his trial and sentencing.

¶ 25 Indeed, postconviction counsel has a duty to make any amendments to an already filed *pro se* petition as necessary to adequately represent and present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. The purpose of this rule is "to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court." *Profit*, 2012 IL App (1st) 101307, ¶ 18. Failure to do so is to provide unreasonable assistance. See *People v. Turner*, 187 Ill. 2d 406, 410 (1999).

¶ 26 The defendant's amended petition, as presented by his postconviction counsel, merely repeated the direct appeal claim that he was denied effective assistance of counsel in that Mr.

---

[4]If a defendant can establish *per se* ineffective assistance of counsel by showing that defense counsel entirely failed to subject the State's case to a meaningful adversarial testing, prejudice will be presumed and he need not satisfy the traditional *Strickland* test. *People v. Combs*, 206 Ill. App. 3d 217, 223 (1990).

Slaughter failed to notify him or the trial court "of his problems with the ARDC." This was not the contention coined by the defendant when he drafted his *pro se* postconviction pleadings. Rather, the defendant asserted that Mr. Slaughter was "actually not allowed to practice law," since he had "lied by omission to the Illinois Supreme Court" in his motion to stay his suspension, which is a *different declaration*.

¶ 27    As the trial court noted, since the claim that the defendant was denied effective assistance of counsel was already addressed by this court in the direct appeal, it was barred by the doctrine of *res judicata* and therefore was not a cognizable claim. See *People v. Blair*, 215 Ill. 2d 427, 445 (2005) (an otherwise meritorious claim has no basis in law if *res judicata* bars the claim). On the other hand, the claim that Mr. Slaughter was *per se* ineffective because his law license had been suspended and he was not authorized to represent the defendant during the stay of his suspension is an entirely *different* claim that had not been raised before. To be sure, on direct appeal, this court considered the defendant's argument that Mr. Slaughter rendered ineffective assistance of counsel in that he was operating under a *per se* conflict of interest due to his ARDC proceedings. However, this court did not address whether Mr. Slaughter was *per se* ineffective, since his law license had been suspended and our supreme court had granted his motion to stay the suspension for the sole and specific representation of another defendant (White) in an unrelated case. As the *per se* ineffectiveness issue and argument was not raised on direct appeal, and therefore not considered by this court, the principle of *res judicata* is inapplicable here. See *People v. Kines*, 2015 IL App (2d) 140518, ¶ 20 (*res judicata* bars the relitigation of issues that were raised and adjudicated in a prior proceeding).

¶ 28    Nevertheless, the State argues that Mr. Slaughter's *per se* ineffectiveness is not a

cognizable claim. Based on that belief, the State asserts there was no reason for postconviction counsel to argue that appellate counsel was ineffective for not raising the issue on direct appeal. The State's basis for this argument is that Mr. Slaughter was authorized to practice law at the time of the defendant's trial and sentencing, albeit limited to a sole defendant in a specific trial, unrelated to the defendant here and his case. The State further posits that it is irrelevant that the supreme court's order granting Mr. Slaughter's motion to stay his suspension did not mention the defendant nor his trial.

¶ 29    However, the defendant's *pro se* postconviction pleadings, along with the record, establish that Mr. Slaughter was authorized to practice law during the time in question *only* so that he could complete his representation of a sole, specific defendant in the unrelated White murder trial. It is of note that Mr. Slaughter did not mention his representation of the defendant in his motion to stay his suspension, notwithstanding that the defendant's trial was set to commence *mere days* after Mr. Slaughter filed his motion to stay his suspension. Further, his motion to stay stated that he would be ready to begin his suspension on October 12, 2004, if the defendant in the unrelated White case was found not guilty on that date. Had that situation occurred, Mr. Slaughter's suspension would have commenced six days *prior* to the start of the defendant's bench trial.

¶ 30    It is true that, ultimately, Mr. Slaughter was still licensed to practice at the time of the defendant's trial and sentencing, since the supreme court had stayed his suspension until November 15, 2004. Nevertheless, the nature of his stayed suspension begs the question as to *what extent* he was licensed and whether he was *qualified* to represent the defendant. See *People v. Gamino*, 2012 IL App (1st) 101077, ¶ 16 (our supreme court has held that, for constitutional purposes, the term "counsel" means a duly licensed *and qualified* lawyer). The State conceded,

during oral arguments before this court, that the scope of the supreme court's order granting Mr. Slaughter's motion to stay his suspension is unclear and speculative.

¶ 31 Moreover, our supreme court has held that representation at trial by an individual who had obtained admission to the bar *through fraudulent means* is *per se* insufficient to satisfy the sixth amendment. *People v. Brigham*, 151 Ill. 2d 58, 68 (1992) (citing *United States v. Novak*, 903 F.2d 883 (2d Cir. 1990)). Thus, it follows that the defendant has a viable argument, based on settled law, that an attorney can be *per se* ineffective when granted a stay of suspension based on his representation that he needs to complete a trial already in progress for one specific client but continues to represent other clients more broadly. We emphasize that we are not issuing a ruling on *whether* Mr. Slaughter was, in fact, *per se* ineffective due to the circumstances of his stayed suspension. This is a novel issue. Similarly, we are not issuing a ruling on whether appellate counsel was ineffective for not raising that specific issue on direct appeal. We instead conclude that the issue is, at the very least, a cognizable claim that warranted being properly presented to the trial court for consideration, and it clearly was not.

¶ 32 In sum, the defendant's *pro se* postconviction pleadings alleged that Mr. Slaughter was "not allowed to practice law" since he "lied by omission to the Illinois Supreme Court" in his motion to stay his suspension. In essence, that assertion was a claim that Mr. Slaughter was *per se* ineffective, and the defendant's appellate counsel did not raise that issue on direct appeal. Thus, his postconviction counsel could and should have amended the *pro se* postconviction petition to argue ineffective assistance of appellate counsel on that specific basis. In other words, postconviction counsel failed to adequately present the cognizable claim that the defendant received ineffective assistance of appellate counsel for failing to raise the issue of Mr. Slaughter's

*per se* ineffectiveness on direct appeal.

¶ 33    Considering the merits of the claim that appellate counsel rendered ineffective assistance by not arguing that Mr. Slaughter was *per se* ineffective, it is possible that the postconviction proceedings in this case would have resulted in a different outcome had postconviction counsel adequately presented the claim. This failure of postconviction counsel undoubtedly resulted in the defendant being prejudiced. See *Turner*, 187 Ill. 2d at 415. Consequently, postconviction counsel provided unreasonable assistance. The defendant is therefore entitled to amend his postconviction petition, with the benefit of new postconviction counsel, so that his postconviction claims can be properly framed and presented, especially his claim of ineffective appellate counsel. The trial court's judgment is therefore reversed on those grounds.

¶ 34    As that issue is dispositive, we need not address the other arguments presented by the defendant. However, we acknowledge the argument regarding postconviction counsel's failure to argue the claim that, although three judges agreed that the defendant could seek new counsel, Judge Dernbach forced the defendant to proceed with Mr. Slaughter, whose representation he clearly did not want. Further, Mr. Slaughter never apprised Judge Dernbach that three prior judges had agreed that the defendant could discharge him and seek new counsel because the defendant was unhappy with his representation. Rather, Mr. Slaughter presented to Judge Dernbach a scenario suggesting that it was his desire to withdraw because he was not being paid. The defendant thus found himself being represented by Mr. Slaughter, whom he had tried for several years to discharge.

¶ 35    Accordingly, we reverse the trial court's judgment dismissing the defendant's petition at the second stage of proceedings. This case is remanded to the trial court for new second-stage

proceedings, after appointment of new postconviction counsel and further allowing the defendant leave to amend his petition. This will allow adequate framing and presentation of his postconviction claims, including that he received ineffective assistance of appellate counsel when his appellate counsel failed to argue that Mr. Slaughter was *per se* ineffective.

¶ 36                                   CONCLUSION

¶ 37     For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this case to the circuit court for appointment of new postconviction counsel to represent the defendant in a new second-stage proceeding. The defendant's new counsel is also granted leave to amend his petition.

¶ 38     Reversed and remanded with instructions.

2022 IL App (1st) 191905

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 00-CR-7694; the Hon. Carol M. Howard, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Deborah K. Pugh, and Cara Fillipelli (law student), of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Tasha-Marie Kelly, and Sara McGann, Assistant State's Attorneys, of counsel), for the People. |