2022 IL App (4th) 210347

NO. 4-21-0347

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
|     Plaintiff-Appellee, | ) Circuit Court of |
|     v. | ) McLean County |
| JERRY MAURICE POOLE, | ) No. 10CF417 |
|     Defendant-Appellant. | ) |
| | ) Honorable |
| | ) John Casey Costigan, |
| | ) Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices DeArmond and Doherty concurred in the judgment and opinion.

**OPINION**

¶ 1        In September 2010, a jury found defendant, Jerry Maurice Poole, guilty of (1) aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)), (2) aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), and (3) possession of a weapon by a felon (*id.* § 24-1.1(a)) in connection with the shooting of Lawrence Johnson. Shortly thereafter, the trial court sentenced defendant to a total of 18 years in prison.

¶ 2        In August 2011, defendant *pro se* filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)), alleging that the testimony of a newly discovered eyewitness, Roderick Simmons, proved defendant was actually innocent of the charges. The trial court denied the petition following an evidentiary hearing.

¶ 3        In December 2020, defendant filed a second amended postconviction petition (the

subject of this appeal) alleging, among other things, (1) actual innocence based on Simmons's affidavit and testimony at the hearing on the section 2-1401 petition, (2) ineffective assistance of trial counsel for failure to investigate and secure Simmons as a trial witness, and (3) ineffective assistance of trial counsel for failure to secure a defense expert in gunshot residue to rebut the State's expert. The trial court dismissed the petition at the second stage.

¶ 4    Defendant appeals, arguing (1) the trial court erred by dismissing his second amended petition because he made a substantial showing that trial counsel provided ineffective assistance by failing to exercise due diligence in investigating Simmons as a potential trial witness and (2) postconviction counsel provided unreasonable assistance by failing to include evidence or affidavits to properly present defendant's claim that trial counsel was ineffective for failing to secure a gunshot residue expert.

¶ 5    We affirm.

¶ 6                              I. BACKGROUND

¶ 7                        A. The Jury Trial and Sentence

¶ 8    In May 2010, the State charged defendant with aggravated battery with a firearm, a Class X felony (count I) (720 ILCS 5/12-4.2(a)(1) (West 2010)), aggravated discharge of a firearm, a Class 1 felony (count II) (*id.* § 24-1.2(a)(2)), and possession of a weapon by a felon, a Class 2 felony (count III) (*id.* § 24-1.1(a)).

¶ 9    In September 2010, the trial court conducted defendant's jury trial.

¶ 10                           1. *Brice Stanfield*

¶ 11    Bloomington police officer Brice Stanfield testified that on May 4, 2010, he saw a fight taking place in the Pop's Grocery parking lot. Stanfield stated that he "was going to walk up to the group and tell them to knock it off." He further stated, "I began to get out of my car, and

that's when I watched a subject that raised a handgun." Stanfield later identified that person as defendant.

¶ 12        Stanfield testified that he continued to watch the gunman as he took cover inside his car because the handgun was "pointing straight down in my direction." Stanfield stated that he heard a pop and "actually saw the muzzle flash of a handgun go off." Stanfield then "called out shots fired" and "drove toward the subjects that—the subject that I saw fire the handgun." Stanfield stated, "I got about 20 feet away from the subject. There were two subjects. *** They were standing on the west side, and they were just scrambling, looking around, trying to figure out what they were going to do next."

¶ 13        Stanfield testified that he was getting ready to draw his sidearm when the gunman and the other subject standing with him, whom Stanfield knew to be Paris Jones, took off running. Stanfield pursued the pair in his squad car. Stanfield stated that "the shooter" took off his hat, threw it, then "duck[ed] between two houses" at 913 and 915 Monroe Street, which ran behind the building where Pop's was located. Stanfield lost sight of the pair and started to get out of his car to run between the houses when he saw Jones "pop out between [the two houses] and begin running back out here to Monroe Street."

¶ 14        Stanfield began pursuing Jones and called out on his radio that (1) he was pursuing Jones, (2) Jones was not the shooter, and (3) the shooter was still running. Stanfield then caught Jones. Other officers arrived on scene, and Stanfield pointed them in the direction the shooter had run. Stanfield secured Jones in his squad car while other officers pursued the shooter. Shortly thereafter, Officer Bill McGonigle brought the shooter "out from behind the houses." Stanfield stated that he immediately told McGonigle "that's our shooter." Stanfield also identified defendant in open court as the shooter.

¶ 15                                    2. *Richard Beoletto and Bill McGonigle*

¶ 16          Officer Richard Beoletto testified that he found defendant tucked in a corner between a shed and a house at 913 Monroe. Beoletto stated that defendant appeared to be trying to conceal himself. McGonigle arrived and placed defendant in handcuffs. Beoletto and McGonigle both identified defendant in open court.

¶ 17                                    3. *Defendant's Recorded Interview*

¶ 18          The State played a recording of an interview that Detective Steve Fanelli conducted with defendant at the police department after the shooting. Throughout the interview, defendant denied that either he or Jones possessed or fired a gun. Specifically, defendant told Fanelli that he and Jones were walking through the parking lot when an unknown "dude" walked up and started "swinging on" Jones for no known reason. Jones's sister pulled up in a van, but before defendant and Jones could get in, "some girl" tried to swing on Jones's sister. The girls started to fight, and Jones tried to break it up when the "dude" tried to swing on him again. Defendant then heard gunshots, and everyone took off running. Defendant stated he did not know where the gunshot came from. Defendant said he ran from the police because he does not trust them. He said he ran to his uncle's house, which was located behind Pop's, and sat on the porch. The police showed up and told him to get on the ground.

¶ 19          Defendant told Fanelli that he was wearing a white shirt with horizontal stripes on the day of the shooting. He said he took it off when "they was rushing me." He also said his shoes came off and his black baseball hat flipped off when he ran.

¶ 20                                    4. *Surveillance Video*

¶ 21          The State played surveillance video from Lucky's, a store also facing the Pop's parking lot. (We note that the quality of the video is very poor—specifically, black and white,

grainy, and pixelated.) The video shows approximately 10 people gathering, a fight breaking out, Stanfield's vehicle pulling up within at least 20 feet of the fight, and the people running away. The video does not clearly depict the shooting itself or the faces of any of those individuals who were present.

¶ 22                                     5. *Civilian Witnesses*

¶ 23          Johnson testified that he confronted Jones in the Pop's parking lot over "a situation" that had happened the day prior. Johnson and Jones started fighting, and Jones's sister and another female started fighting. Johnson testified that, while his back was turned, he was shot in his calf muscle. He did not see who shot him. Johnson got into a car and went to the hospital.

¶ 24          Chantell Franklin and Gary Pargo both testified that they were present for the fight and heard the gunshot but neither saw who fired the gun. Elias Talley testified that he also was present for the fight. He heard a gunshot directly next to him. Talley stated that he looked to his left to see who fired the gun and saw "a chrome pistol" and "a guy, a male, a black male [wearing] a white t-shirt." Talley only saw the back of the male because he was running away. The State showed Talley a picture of the gun that was recovered, and Talley testified that he remembered seeing the chrome part of the gun.

¶ 25                            6. *Physical Evidence and Forensic Analysis*

¶ 26           The State presented photographs showing a white shirt with horizontal stripes lying on the ground in a narrow area next to a chain link fence separating the properties at 913 and 915 Monroe Street. The photographs also showed, next to the shirt, a small firearm tucked under a concrete block. The police also collected a black ball cap and two dark tennis shoes that were located in defendant's flightpath.

¶ 27          Linda Yborra, a forensic scientist, testified that she analyzed (1) the fired bullet

retrieved from Johnson's leg, (2) a fired casing retrieved from the Pop's parking lot, and (3) the gun found in the area between 913 and 915 Monroe Street. Yborra concluded that the bullet and casing were fired from the gun. A crime scene technician involved in collecting the evidence testified he did not test the gun for fingerprints because Stanfield had seen the shooting.

¶ 28    Mary Wong testified that she was a forensic scientist employed by the Illinois State Police Forensic Crime Laboratory, specializing in trace chemistry. Wong testified that she examined gunshot residue kits collected from defendant and Jones. The test administered on defendant contained "particles characteristic of background samples," which led her to conclude that defendant "may not have discharged a firearm with either hand." She continued, "If he did, then the particles were removed by activity, were not deposited, *** or not detected by the procedure." Her findings were the same as to Jones. Wong then explained that there were multiple reasons why a person would not have gunshot residue on his hands even though he had fired a firearm.

¶ 29    On cross-examination, defendant asked Wong only two questions—specifically, (1) how long she had been "doing this [type of analysis]," and (2) whether the equipment she used was a scanning electron microscope.

¶ 30    Defendant did not testify or present any evidence.

¶ 31    *7. The Verdict and Sentence*

¶ 32    The jury found defendant guilty of all counts.

¶ 33    In November 2010, the trial court sentenced defendant to concurrent terms of 18 years in prison on count I and 14 years on count III. (We note that count II merged with count I.)

¶ 34    B. The Direct Appeal

¶ 35    In 2010, defendant appealed his conviction and sentence, arguing (1) he was denied

- 6 -

effective assistance of counsel when his attorney did not move to sever count III from the other charges and (2) the trial court improperly sentenced him to an extended term on count III. The State did not contest defendant's sentencing argument. This court (1) rejected defendant's severance claim but (2) remanded with directions to reduce defendant's sentence from 14 years to 7 years. *People v. Poole*, 2012 IL App (4th) 101017, ¶ 14, 17, 972 N.E.2d 340.

¶ 36                                  C. The Section 2-1401 Petition

¶ 37           In August 2011, defendant *pro se* filed a petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)), alleging (1) actual innocence based on newly discovered evidence—namely, the affidavit of Freddie Gunn (Freddie)—and (2) ineffective assistance of trial counsel for failure to investigate, locate, and interview Freddie. Defendant attached two affidavits to his petition. The first was the affidavit of his mother, Sandra McGowan, who averred that before defendant's jury trial, Tisha Gunn told McGowan that Freddie had witnessed the shooting. McGowan averred that she spoke with Freddie and then gave Freddie's name and address to defendant's trial counsel.

¶ 38           Defendant also attached Freddie's affidavit to his petition, in which Freddie averred that he was an eyewitness to the shooting and he saw "Jerome Wilson" emerge from behind a car with a gun and fire it once in the direction of Johnson and Jones, who were fighting. (We note that defendant requested the appointment of counsel to represent him on his section 2-1401 petition. At a November 2011 status hearing, the trial court denied defendant's request after explaining that litigants in civil proceedings do not have a right to counsel.)

¶ 39           In December 2011, the State filed a motion to dismiss defendant's section 2-1401 petition, to which it attached a "booking sheet" for Freddie showing that, because he was in the custody of the McLean County Sheriff's Department from April 2010 to June 2010, he could not

have witnessed the shooting.

¶ 40    In January 2012, the trial court conducted a hearing on the State's motion to dismiss. At the beginning of the hearing, defendant filed *instanter* a "Motion for Leave to Introduce Additional Newly Discovered Evidence in Support of Defendant's Relief of Judgment." Defendant's motion claimed that defendant "has uncovered a sworn statement from a[n] eyewitness to the May 4, 2010, shooting *** that supports the defendant's actual innocence claim." Defendant identified this new witness as "Roderick Simmons" and attached Simmons's affidavit, which stated that Simmons "personally observed *** Jerome Wilson shoot another individual in front of El Loco's Store" on May 4, 2010. Simmons's affidavit stated that he did not come forward to the authorities because he did not get along with either Wilson or defendant at the time. Simmons stated, however, that "[s]ince then this incident has been weighing heavy on my concious [*sic*]. I personally seeked [*sic*] out [defendant] to give him this statement." (We note defendant did not allege ineffective assistance of counsel in connection with the Simmons affidavit; however, defendant did allege that Simmons's statement "corroborates the evidence already attached to petitioner's [original] Relief of Judgment.")

¶ 41    The trial court first addressed the State's motion to dismiss and struck the original petition, "finding that there is no basis for relief under 2-1401 based upon either of the two affidavits that were originally submitted." The trial court then addressed defendant's new filing, construed it as an amended section 2-1401 petition, and granted him leave to file because the filing contained "additional or new information that would be different than the reasons that the [S]tate has presented to the court in support of its motion to dismiss the original pleading."

¶ 42    In June 2012, the trial court conducted a hearing on defendant's amended section 2-1401 petition. Simmons, who was in the custody of the Illinois Department of Corrections,

testified at the hearing. Simmons testified that on May 4, 2010, he was part of a crowd "up at Pop's" when a fight broke out. He heard gunshots, and the crowd ran. Simmons saw that Wilson had a gun. Simmons further stated that Wilson was the only person he saw with a gun. On cross-examination, Simmons stated that he saw defendant when they were both in prison in Pinckneyville and he told defendant what he saw on the day of the shooting.

¶ 43    The trial court denied defendant's amended section 2-1401 petition, ruling as follows:

> "In order to be entitled to relief from judgment based on newly discovered evidence, the evidence must be so conclusive that it would probably change the result if a new trial was granted, that it was discovered after trial, and that it was of such a character that it could not have been discovered prior to trial in the exercise of due diligence, must, further, be material to one or more issues, and it must not merely be cumulative to the trial evidence.
>
> *** What we have is testimony that would, if believed by the trier of fact, be cumulative evidence which would not, in essence, directly change the result of the trial were it to be considered, and further, was evidence which, upon due diligence of the defendant, could have been obtained prior to and then presented to the jury at the time of his trial based upon the fact that there were individuals, plural, that were present on the date, time, and place in question, and that the defendant had the means and access available to go ahead and identify who those witnesses would be that could corroborate what he now represents to be the case, but was not represented at the time of trial, so it's a matter of no due diligence also having been demonstrate on the part of the defendant.

So, whether it be under actual innocence, whether it be under newly discovered evidence, the defendant has failed to go ahead and meet the threshold requirements by a preponderance of the evidence that he would be entitled to the relief that he is requesting, and the Petition for Relief from Judgment under 2-1401 will therefore be denied."

¶ 44   Defendant did not appeal the trial court's denial of his section 2-1401 petition.

¶ 45                    D. The Postconviction Petitions

¶ 46               1. *The* Pro Se *and First Amended Petitions*

¶ 47   In April 2013, defendant *pro se* filed a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). The *pro se* petition was a form document in which defendant alleged that his right to effective assistance of counsel was violated (1) "where trial counsel failed to interview potential defense witnesses and pursue substantial mistaken identification" and (2) "where defense counsel failed to interview and call as a witness Roderick Simmons who could have corroborated [defendant's] alibi." Defendant did not specifically identify any potential witnesses other than Simmons.

¶ 48   In August 2013, the trial court appointed counsel to represent defendant on his postconviction petition. In April 2016, defendant, through counsel, filed an amended postconviction petition arguing, relevant to this appeal, that his trial counsel rendered ineffective assistance by failing to interview Simmons and secure him as a trial witness. Defendant attached Simmons's affidavit (the same affidavit that had been attached to the amended section 2-1401 petition) and asked the court to take judicial notice of Simmons's testimony at the June 2012 hearing on defendant's amended section 2-1401 petition. Defendant also alleged that his trial counsel failed to "pursue independent defense expert testimony regarding the issue of the lack of

- 10 -

gunshot residue on Defendant."

¶ 49    In August 2016, the State filed a motion to dismiss defendant's amended petition, arguing (1) if Simmons's testimony was "newly discovered" evidence in August 2011 (as defendant had alleged in his section 2-1401 petition), trial counsel could not be ineffective for failing to call Simmons as a witness at trial in September 2010 and (2) defendant could not show he was prejudiced by trial counsel's failure to hire a gunshot residue expert to challenge the State's expert because the State's expert's testimony that defendant may or may not have fired a gun was "at a minimum[,] without impact."

¶ 50    In November 2016, the trial court conducted a hearing on the State's motion and dismissed defendant's amended petition. Specifically, the court found that "the 2-1401 petition based on Mr. Simmons's testimony was previously resolved and the doctrine of *res judicata* applies." The court did not specifically address defendant's gunshot residue claim in its oral ruling but stated generally that it agreed with the arguments set forth in the State's motion and found that defendant did not make a showing of any substantial constitutional violation.

¶ 51    In February 2017, this court entered an order reversing the judgment of the trial court and remanding for further proceedings because defendant's postconviction counsel failed to file an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate. *People v. Poole*, No. 4-16-0835 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 52    2. *The Second Amended Petition*

¶ 53    In May 2019, on remand, the trial court appointed new counsel to represent defendant.

¶ 54    In December 2020, defendant's new postconviction counsel filed a second amended postconviction petition and Rule 651(c) certificate. The second amended petition alleged,

among other things, (1) actual innocence based upon Simmons's testimony and (2) ineffective assistance of trial counsel for failure to hire a gunshot residue expert to challenge the State's gunshot residue expert at trial. The second amended petition did not explicitly reallege the ineffective assistance claim for trial counsel's failure to discover and call Simmons at trial, but it incorporated the claim by reference to the initial *pro se* petition.

¶ 55 The second amended petition attached Simmons's affidavit and the transcript of his testimony from section 2-1401 hearing. The petition did not attach an affidavit from any proposed gunshot residue expert.

¶ 56 In February 2021, the State filed a motion to dismiss defendant's second amended postconviction petition. Regarding the actual innocence claim, the State argued that claim should be dismissed as a matter of law because (1) it was previously litigated in June 2012 and (2) Simmons's testimony was not newly discovered or noncumulative. Regarding the gunshot residue expert claim, the State argued that claim should be dismissed because (1) trial counsel's decision was a reasonable trial strategy that did not prejudice defendant, (2) the claim could have been brought on direct appeal, and (3) "this claim is not supported by the record nor by any accompanying affidavits." The State's motion did not address defendant's ineffective assistance claim relating to Simmons's testimony as a claim separate from the actual innocence claim.

¶ 57 In May 2021, the trial court conducted a hearing on the State's motion to dismiss. The hearing was brief, and the parties answered questions from the court clarifying their positions on the application of the *res judicata* doctrine to the actual innocence claim. The court took the matter under advisement.

¶ 58 In June 2021, the trial court entered a written order dismissing defendant's postconviction petition. The court ruled that "[d]efendant's claim as to actual innocence based

upon the testimony of Roderick Simmons has already been litigated [in his section 2-1401 petition]" and was, accordingly, barred by *res judicata*. The court further found that Simmons's testimony was not newly discovered and was cumulative.

¶ 59　　　　Although the trial court addressed several of defendant's other claims (not relevant to this appeal) and found they were either barred by *res judicata* or did not make a substantial showing of a constitutional violation, the court's order did not specifically address defendant's ineffective assistance claims based on trial counsel's failures to (1) investigate Simmons as a witness or (2) identify a gunshot residue expert and attach his affidavit.

¶ 60　　　　This appeal followed.

¶ 61　　　　　　　　　　　　　II. ANALYSIS

¶ 62　　　　Defendant appeals, arguing (1) the trial court erred by dismissing his second amended petition because he made a substantial showing that trial counsel provided ineffective assistance by failing to exercise due diligence in investigating Simmons as a potential trial witness and (2) postconviction counsel provided unreasonable assistance by failing to include evidence or affidavits to properly present defendant's claim that trial counsel was ineffective for failing to secure a gunshot residue expert.

¶ 63　　　　We affirm.

¶ 64　　　　　　　　　A. Ineffective Assistance of Trial Counsel

¶ 65　　　　Defendant first argues that the trial court erred by dismissing his postconviction claim that trial counsel was ineffective for failing to investigate Simmons on the grounds of *res judicata* because the claim that was previously decided during the section 2-1401 proceedings was a claim of actual innocence, not ineffective assistance.

¶ 66　　　　　　　　　1. *The Applicable Law and Standard of Review*

¶ 67                          a. The Post-Conviction Hearing Act

¶ 68          The Act (725 ILCS 5/122-1 *et seq.* (West 2012)) provides a method by which a defendant can assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. A proceeding under the Act contains three stages. *Id.*

¶ 69          At the first stage, the trial court conducts its own review of the petition to determine if the petition states the gist of a constitutional claim. *People v. Allen*, 2015 IL 113135, ¶ 24, 24 N.E.3d 615. If the petition is not summarily dismissed at the first stage, the proceedings move to the second stage. *People v. House*, 2021 IL 125124, ¶ 16.

¶ 70          "At the second stage of postconviction proceedings, counsel may be appointed to represent the petitioner ***." *House*, 2021 IL 125124, ¶ 17. To avoid dismissal, a defendant must set forth in his petition a substantial showing of a constitutional violation and attach any accompanying documentation. *Id.* The failure to attach the necessary accompanying documentation or explain its absence is generally fatal to a postconviction petition. *People v. Delton*, 227 Ill. 2d 247, 255, 882 N.E.2d 516, 520 (2008). Allegations in a postconviction petition are taken as true unless affirmatively refuted by the record. *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. "Upon a substantial showing of a constitutional violation, the petition must be advanced to the third stage, where the [trial] court conducts an evidentiary hearing." *People v. Brown*, 2017 IL 121681, ¶ 24, 102 N.E.3d 205 (citing 725 ILCS 5/122-6 (West 2012)). "Upon no showing, the petition should be dismissed." *Id.*

¶ 71          The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*. *Id.*

¶ 72                          b. Ineffective Assistance

- 14 -

¶ 73        Claims of ineffective assistance of counsel are governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To state a claim of ineffective assistance of counsel, a defendant must allege that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *Id.* ¶ 30. "Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland*, 466 U.S.at 694). "A defendant must satisfy both prongs of the *Strickland* test, and a failure to satisfy [either] of the prongs precludes a finding of ineffectiveness." (Internal quotation marks omitted.) *Id.*

¶ 74        Trial counsel has a professional duty to "independently investigate any possible defenses." *Domagala*, 2013 IL 113688, ¶ 38. When "counsel had reason to know, from an objective standpoint, that a possible defense *** was available, failure to investigate can constitute ineffective assistance of counsel." (Internal quotation marks omitted.) *Id.* "In particular, the failure to interview witnesses may indicate incompetence when trial counsel knows of the witness and their testimony may be exonerating." (Internal quotation marks omitted.) *People v. Clark*, 2011 IL App (2d) 100188, ¶ 26, 957 N.E.2d 162.

¶ 75                        c. Section 2-1401 Petitions for Relief From Judgment

¶ 76        Section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)) establishes a procedure by which to vacate final judgments that are more than 30 days old. *People v. Garry*, 2017 IL App (4th) 150373, ¶ 20, 83 N.E.3d 627. Although section 2-1401 petitions may be used

to attack a criminal judgment, they are subject to the rules of civil practice. *Id.* ¶ 21.

¶ 77    "In considering a section 2-1401 petition, the court must determine whether facts exist that were unknown to the court at the time of trial and would have prevented a judgment against the defendant." *People v. Welch*, 392 Ill. App. 3d 948, 952, 912 N.E.2d 756, 760 (2009). To obtain relief under section 2-1401, "a [defendant] must set forth specific factual allegations showing (1) the existence of a meritorious claim or defense in the original action; (2) due diligence in presenting the claim or defense to the court in the original action; and (3) due diligence in filing the section 2-1401 petition." *People v. Davis*, 2012 IL App (4th) 110305, ¶ 14, 966 N.E.2d 570.

¶ 78                              d. Actual Innocence

¶ 79    "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such a conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47, N.E.3d 37. "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Id.* "Evidence is material if it is relevant and probative of the petitioner's innocence." *Id.* "Noncumulative evidence adds to the information that the fact finder heard at trial." *Id.* "Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result on retrial." *Id.* "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* ¶ 48. "The conclusive character evidence is the most important element of an actual innocence claim." *Id.* ¶ 47.

¶ 80                          e. The Doctrine of *Res Judicata*

¶ 81    "*Res judicata* is an equitable doctrine that bars the relitigation of issues that were

- 16 -

raised and adjudicated in a prior proceeding." *People v. Kines*, 2015 IL App (2d) 140518, ¶ 20, 37 N.E.3d 428 (citing *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 44). Under the doctrine of *res judicata*, "[(1)] a final judgment on the merits rendered by a court of competent jurisdiction operates to bar a subsequent suit between [(2)] the same parties and involving [(3)] the same cause of action." (internal quotation marks omitted.) *Id.* ¶ 21. "*Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided." (Internal quotation marks omitted.) *Id.* ¶ 20. "This doctrine results from the practical necessity that there must be an end to litigation and that controversies once decided on their merits *** remain in repose." (Internal quotation marks omitted.) *Id.*

¶ 82 Whether a claim is barred by *res judicata* is a question of law that is reviewed *de novo*. *Id.* However, because *res judicata* is "first and foremost an equitable doctrine," it "may be relaxed where justice requires." (Internal quotation marks omitted.) *Id.* ¶ 21. "In other words, the question is not solely *whether* the doctrine of *res judicata* applies; we must also ask whether it *should* be applied." (Emphases in original.) *Id.*

¶ 83 2. *This Case*

¶ 84 In defendant's section 2-1401 petition, the sole claim relating to the Simmons affidavit was an actual innocence claim. Because defendant chose the procedural vehicle of a section 2-1401 petition, he was obligated to show (1) his actual innocence claim was meritorious, (2) he exercised due diligence in presenting the claim to the trial court, and (3) he exercised due diligence in filing the section 2-1401 petition. *Davis*, 2012 IL App (4th) 110305, ¶ 14. To establish that his actual innocence claim was meritorious, defendant was required to show that Simmons's affidavit was (1) newly discovered, (2) material and not cumulative, and (3) of such a conclusive nature that it would probably change the result on retrial. *Robinson*, 2020 IL 123849, ¶ 47.

¶ 85    The trial court heard Simmons's live testimony at the evidentiary hearing on defendant's section 2-1401 petition, and the court denied defendant's actual innocence claim. In doing so, the court found that Simmons's testimony (1) "would, if believed by the trier of fact, be cumulative evidence which would not, in essence, directly change the result of the trial," and (2) could have been discovered and presented to the jury had defendant exercised due diligence. Stated simply, the court denied defendant's section 2-1401 petition because (1) the Simmons testimony was cumulative and not conclusive and (2) defendant did not exercise due diligence.

¶ 86    In his second amended postconviction petition, defendant claimed that his trial counsel was ineffective for failing to exercise due diligence in developing Simmons as a witness. To state a claim for ineffective assistance, defendant was required to show (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *Veach*, 2017 IL 120649, ¶ 30.

¶ 87    At issue in this appeal is whether the trial court's findings regarding defendant's actual innocence claim in his section 2-1401 petition have any preclusive effect, under the doctrine of *res judicata*, on defendant's postconviction ineffective assistance claim.

¶ 88    As we noted earlier (*supra* ¶ 81), the doctrine of *res judicata* "bars the relitigation of issues that were raised and adjudicated in a prior proceeding." *Kines*, 2015 IL App (2d) 140518, ¶ 20. We acknowledge that actual innocence and ineffective assistance of counsel are generally different claims with different issues. However, *res judicata* can operate to bar different legal theories that are predicated on the same underlying facts. See *Lutkauskas*, 2015 IL 117090, ¶ 47 ("[T]he dismissal of a single theory of recovery against a particular defendant operates as a final adjudication of all claims based on other theories of recovery that could have been brought as part of the initial action, as long as they arise from the same core of operative facts."); *River Park, Inc.*

*v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883 (1998) ("[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.").

¶ 89 In this case, the actual innocence claim and the ineffective assistance claim—both arising from the Simmons affidavit—share a dispositive issue: whether a probability exists that Simmons's testimony would change the result on retrial. Specifically, at issue in the section 2-1401 actual innocence claim was whether Simmons's testimony, "when considered along with the trial evidence, would probably lead to a different result on retrial." *Robinson*, 2020 IL 123849, ¶ 47. At issue in the postconviction ineffective assistance claim was whether there exists "a reasonable probability that, but for counsel's [failure to discover and develop Simmons as a witness], the result of the proceeding would have been different." (Internal quotation marks omitted.) *Veach*, 2017 IL 120649, ¶ 30.

¶ 90 By finding in the earlier section 2-1401 proceeding that Simmons's testimony would *not* change the result on retrial, the trial court answered the question of whether there exists a reasonable probability that, but for counsel's alleged failure to call Simmons as a witness at trial, the result of the proceeding would have been different. The court, in the same case between the same parties, heard Simmons's testimony and determined it would not have changed the outcome. Defendant did not appeal the trial court's finding.

¶ 91 Accordingly, under the particular facts of this case, the doctrine of *res judicata* precludes defendant's ineffective assistance claim. If defendant's ineffective assistance claim were not barred by *res judicata*, defendant would have a second opportunity to argue the same issue— namely, whether, had trial counsel presented Simmons's testimony to the jury, there exists a reasonable probability that the outcome would have been different. A trial court's finding in favor

of defendant on that issue in the postconviction proceedings would result in inconsistent findings on the same issue in the same litigation involving the same parties, which is contrary to principles of judicial economy that the doctrine of *res judicata* seeks to promote. See *River Park*, 184 Ill. 2d at 319 ("The purpose of *res judicata* is to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts and also [to] prevent[ ] the unjust burden that would result if a party could be forced to relitigate what is essentially the same case.").

¶ 92       We emphasize that our holding is limited to the facts of this case because we acknowledge that there may be other cases where an actual innocence claim may not share the same dispositive issue as a subsequent ineffective assistance claim. However, we need not speculate on what those circumstances may be because they do not exist in this case.

¶ 93       We also note that an analysis of defendant's appeal from a different perspective leads us to the same conclusion. Defendant seeks a reversal of the trial court's judgment and remand for a third-stage evidentiary hearing on his claim that his trial counsel was ineffective for failing to develop Simmons as a witness. Such a hearing would consist, primarily, of Simmons's testimony. However, defendant has already presented Simmons's live testimony to the trial court. A third stage evidentiary hearing would be a repeat of the hearing on defendant's amended section 2-1401 petition, at which the court would be considering, again, the probability of Simmons's testimony to change the outcome of defendant's trial. *Res judicata* prevents defendant from taking "two bites out of the same apple." *Diocese of Quincy v. Episcopal Church*, 2016 IL App (4th) 150193, ¶ 28, 56 N.E.3d 573.

¶ 94       For all of these reasons, we affirm the judgment of the trial court dismissing defendant's postconviction petition.

¶ 95                    B. Ineffective Assistance of Postconviction Counsel

¶ 96          Defendant also argues that his postconviction counsel provided unreasonable assistance by failing to (1) identify a specific gunshot residue expert who should have been called as a witness at trial, (2) attach an affidavit containing that expert's prospective testimony, or (3) explain the absence of an identified expert and affidavit. Defendant contends that, by not taking these steps, postconviction counsel failed to comply with his obligation under Rule 651(c) to adequately present defendant's claim.

¶ 97                              1. *The Applicable Law*

¶ 98          "Because the sixth amendment right to counsel does not extend to postconviction petitioners, counsel is afforded in collateral proceedings under the Act only as a matter of legislative grace, if at all." *People v. Custer*, 2019 IL 123339, ¶ 30, 155 N.E.3d 374. "Consequently, criminal defendants seeking relief in postconviction petitions have no constitutional right to counsel, effective or otherwise." *Id.* Under the Act, a defendant is entitled only to a reasonable level of assistance, "a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Id.*

¶ 99          "Commensurate with the lower reasonable assistance standard mandated in postconviction proceedings, Illinois Supreme Court Rule 651 (eff. July 1, 2017) sharply limits the requisite duties of postconviction counsel." *Id.* ¶ 32. Postconviction counsel is "required only to certify they have [(1)]'consulted with the petitioner by phone, mail, electronic means or in person,' [(2)] 'examined the record' as needed to shape the defendant's *pro se* claims, and [(3)] 'made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation' of those claims." *Id.* (quoting Ill. S. Ct. R. 651(c) (eff. July 1, 2017)).

¶ 100          "If amendments to a *pro se* postconviction petition would only further a frivolous

or patently [meritless claim], they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511 (2004). Moreover, although Rule 651(c) requires postconviction counsel to make necessary amendments, "counsel is under no obligation to actively search for sources outside the record that might support general claims raised in a postconviction petition." (Internal quotation marks omitted.) *People v. Nelson*, 2016 IL App (4th) 140168, ¶ 16, 49 N.E.3d 1007.

¶ 101　　　　The filing of a Rule 651(c) certificate creates a rebuttable presumption that counsel has provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19, 974 N.E.2d 813. "It is the defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.*

¶ 102　　　　An attorney's compliance with Rule 651(c) is reviewed *de novo*. *Id.* ¶ 17.

¶ 103　　　　　　　　　　　　　　　2. *This Case*

¶ 104　　　　In the present case, defendant's *pro se* petition alleged that his right to the effective assistance of counsel was violated (1) "where trial counsel failed to interview potential defense witnesses and pursue substantial mistaken identification" and (2) "where defense counsel failed to interview and call as a witness Roderick Simmons who could have corroborated [defendant's] alibi."

¶ 105　　　　Defendant's first postconviction counsel amended the *pro se* petition to allege ineffective assistance of trial counsel for failure to identify and secure as a witness a gunshot residue expert. At a second-stage hearing, the trial court rejected the claim on its merits, stating that it agreed with the arguments made by the State in its written motion to dismiss. The State had argued that defendant could not state a claim for ineffective assistance because he could not demonstrate that he was prejudiced by his trial counsel's failure to secure a gunshot

expert. Specifically, the State asserted the following:

> "Wong's testimony was at a minimum *** without impact to the defense and
> could also have been seen as positive. In short, there was nothing for the trial
> counsel to cross examine this witness [Wong] on because the testimony supported
> the Defense theory that the Defendant didn't shoot a gun. Therefore, there would
> also be no need to call a defense expert to say the same thing."

¶ 106          However, as noted (*supra* ¶ 51), defendant's first postconviction counsel failed to file a Rule 651(c) certificate. Accordingly, this court reversed the trial court's judgment on that limited basis, and the trial court appointed new postconviction counsel to represent defendant on remand. *Poole*, No. 4-16-0835.

¶ 107          In defendant's second amended postconviction petition, new postconviction counsel repeated the gunshot residue expert claim without identifying an expert, attaching an affidavit, or explaining the absence of an affidavit. Defendant argues that these failures demonstrate a lack of substantial compliance with the requirements of Rule 651(c). We disagree.

¶ 108          First, this case is similar to *Nelson*, 2016 IL App (4th) 140168, ¶ 21, in which this court found that "postconviction counsel did not fail to provide reasonable representation by failing to conduct a search to find an expert witness who would support defendant's claims." In *Nelson*, the *pro se* petition alleged generally that trial counsel rendered ineffective assistance by not challenging the credentials of the forensic pathologist called to testify by the State. *Id.* ¶ 7. Postconviction counsel filed an amended petition arguing that trial counsel was ineffective for failing to "hire an independent expert to rebut [the pathologist's] testimony." *Id.* ¶ 8. The trial court found that defendant "provided no facts to support his allegations" and denied defendant's petition. *Id.* ¶ 9.

¶ 109          This court affirmed the trial court's judgment, stating the following:

> "Rule 651's mandate requiring counsel to make necessary amendments is not limitless. For example, case law establishes counsel is 'under no obligation to actively search for sources outside the record that might support general claims raised in a post-conviction petition. *People v. Johnson*, 154 Ill. 2d 227, 247 609 N.E.2d 304, 314 (1993). Our supreme court also held, if a *pro se* petitioner fails to specify a particular witness to support a claim, appointed counsel is under no obligation to go on a 'fishing expedition' to find a witness. *Id.* at 247-48 ***.

> Analogous to this case, our supreme court held, in *People v. Williams*, 186 Ill. 2d 55, 61, 708 N.E.2d 1152, 1155 (1999), Rule 651(c) does not require appointed counsel to provide an affidavit or other documentation from an unidentified expert witness." *Id.* ¶¶ 16-17.

¶ 110          Like in *Nelson*, defendant brought in his *pro se* petition a general claim that his trial counsel rendered ineffective assistance by failing to "interview potential defense witnesses and pursue substantial mistaken identification." Defendant did not identify any of those potential defense witnesses, except Roderick Simmons. As *Nelson*, *Johnson*, and *Williams* instruct, postconviction counsel was not obligated to go on a fishing expedition to find an expert witness to support defendant's general claim.

¶ 111          Additionally, we conclude that defendant's gunshot residue expert claim lacks merit. When the trial court denied defendant's gunshot residue expert claim in the first amended petition, the court noted that it agreed with the arguments contained in the State's written motion to dismiss. We also agree, for the same reasons, that defendant cannot demonstrate either prong of the *Strickland* test. Defendant cannot show either that his attorney performed deficiently by failing

to secure an independent gunshot residue expert or that he was prejudiced by the absence of an independent expert to challenge Wong's testimony because Wong's testimony was completely neutral, if not favorable to defendant. She testified that defendant "may not have fired" a gun and explained that her test discovered only "particles characteristic of background samples." That is to say, using an instrument as sophisticated as a scanning electron microscope, she was unable to detect any gunshot residue on the samples collected from defendant. Wong's explanations for why gunshot residue particles may have been "removed by activity, *** not deposited, or not detected" were entirely speculative. The jury did not need an additional expert witness to explain what was apparent from Wong's testimony: the State had no forensic evidence to prove that defendant fired the gun. Accordingly, defendant cannot show that he was prejudiced by the absence of independent expert testimony to challenge Wong's testimony.

¶ 112       Moreover, given the neutrality of Wong's testimony, it was a reasonable strategy for trial counsel to (1) *not* challenge or overemphasize Wong's testimony and (2) argue to the jury that the State's own expert could not detect gunshot residue on defendant. Accordingly, it cannot be said that defendant's trial counsel performed deficiently. To the contrary, we conclude that defendant's trial counsel performed appropriately with regard to Wong's testimony.

¶ 113       Accordingly, we reject defendant's argument that his postconviction counsel rendered unreasonable assistance.

¶ 114                                III. CONCLUSION

¶ 115       For the reasons stated, we affirm the trial court's judgment.

¶ 116       Affirmed.

*People v. Poole*, 2022 IL App (4th) 210347

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 10-CF-417; the Hon. John Casey Costigan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Roxanna A. Mason, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Benjamin M. Sardinas, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |